

IN THE

# Court of Appeals of Indiana

Earl E. Myers, Jr.,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Aug 11 2026, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

August 11, 2026

Court of Appeals Case No.
25A-CR-2466

Appeal from the
Kosciusko Superior Court

The Honorable
Karin A. McGrath, Judge

Trial Court Cause No.
43D01-2408-F1-501

**Robb, Senior Judge.**

## Statement of the Case

[1] Earl E. Myers, Jr. appeals after a jury trial from his conviction of and sentence for one count of Level 1 felony child molesting and one count of Level 4 felony child molesting. He contends that the trial court erred by admitting an exhibit which contained the text of the protected person statute and that his sentence is inappropriate in light of the nature of the offenses and his character. We conclude that Myers has not demonstrated that he is entitled to relief on either ground and affirm.

## Facts and Procedural History

[2] In the summer of 2024, A.A. turned ten years old. She has learning disabilities and a speech impediment, which makes it difficult to understand her. She struggles to articulate words and "talks with her hands." Tr. Vol. 2, p. 55. Her father had full custody, but she visited her mother on weekends. Her mother lived with Myers in the Deluxe Inn motel.

[3] A.A. stayed with her mother and Myers on the last weekend of July 2024. On Wednesday, July 31, Shelia Laymon, who is like a grandmother to A.A., was helping her shower. Laymon had to remind A.A. to start at the top of her body

and wash down. When A.A. reached her belly button she began to cry. Laymon asked A.A. what was wrong, and "she started taking her hand and poking at her private area." *Id.* at 39. A.A. mentioned Myers' name and said, "He did it." *Id.* Then A.A. became "hysterical" and started "really crying super hard." *Id.* A.A. said that "it hurt and he wouldn't stop." *Id.* at 40. Laymon had trouble calming her down, so she called A.A.'s father.

[4] A.A. was interviewed by Lorrie Freiburger at the Child Advocacy Center. When Freiburger asked her what part of her body was hurt, A.A. pointed to her vagina. She also circled the vagina on an illustration. A.A. told Freiburger that Myers took her clothes off and put his hand inside her vagina, which hurt. She demonstrated that Myers used his other hand to masturbate himself while his clothes were off. A.A. said she told him to stop, but he said no.

[5] The State charged Myers with Level 1 felony child molesting and Level 4 felony child molesting. The trial court held a protected person hearing on May 16, 2025, and determined that A.A. was a protected person. Myers' jury trial began on August 4, 2025.

[6] During the trial, outside the presence of the jury, the State asked the court to "take judicial notice of Indiana Code 35-37-4-6, which is the protected person statute and also incorporate into the record as necessary the Court's prior order of that protected person hearing." *Id.* at 135. The court granted the request. Myers then submitted the video of A.A.'s testimony during the protected person hearing as an exhibit. In front of the jury, he "move[d] to admit Exhibit A and

for the sake of the jury, Exhibit A is a protected person hearing which was conducted earlier in front of this court as cross examination of that forensic interview you got to see." *Id.* at 135-36.

[7] The parties and the court then discussed, outside the presence of the jury, the best way to define a protected person hearing for the jury. The deputy prosecutor said, "They don't know what that is. And there's a statute on it. I think that's probably the best statement of what a protected persons hearing is is the statute." *Id.* at 139. Initially, Myers' counsel said he was "fine with (indiscernible) instruction instead of submitting the statute." *Id.* The deputy prosecutor replied, "I think it'll just make it worse." *Id.* Myers' counsel suggested, "Submit it as an exhibit. They can look at it if they want (indiscernible)." *Id.* at 140. The deputy prosecutor agreed with defense counsel's suggestion and told the court, "you've already taken judicial notice of it so it's already in the record." *Id.*

[8] The parties continued in the jury's presence, and the State moved to admit Exhibit 10, the text of the protected person statute. *Id.* at 142. Myers' counsel said, "No objection, Your Honor." *Id.* The State indicated it was unnecessary to publish the exhibit because it was available to the jury if they wanted to see it.

[9] State's witness Linda McIntire, a clinical psychologist who had conducted a protected person evaluation of A.A., testified about her observations and interactions with A.A. Without objection, McIntire explained that the

evaluation "is to determine whether [A.A.] would meet criteria to be protected from testimony—testifying in an open courtroom based on whether or not it would impair her ability to substantially communicate or reasonably communicate." *Id.* at 147-48. McIntire testified "that calling [A.A.'s impairment] mild intellectual disability was probably minimizing the degree of her impairment [she] found her to be more in what we call the moderate [dis]ability range." *Id.* at 149. A.A.'s full scale IQ was 53, which is "in the moderate range." *Id.* at 150. A.A. "had PTSD. She reported substantial fears. She reported that she was having nightmares." *Id.*

[10] During closing argument, the deputy prosecutor told the jury that it had "heard a few references to a protected persons hearing." *Id.* at 165. He continued, "One of the State's exhibits that I put in that statute is the protected persons statute. So in your deliberations if you wanna learn more about that, that is in evidence. You can reference that." *Id.* Myers did not object to the prosecutor's argument.

[11] The trial court's final instructions included this instruction to the jury that it had

> the right to determine the law and the facts. While this means that you are to determine what the law is for yourself, it does not mean that you have the right to make, repeal, disregard or ignore the law as it exists. The instructions of the Court are the best source as to the law applicable to this case.

*Id.* at 177. The court then defined the offenses. And the court further instructed:

> A statement and/or videotape has been admitted into evidence in this trial. It is for you, the jury, to determine the weight and credit to be given the statement and/or videotape. In making that determination, you, the jury, shall consider the following: (1) The mental and physical age of the person making the statement and/or videotape[;] (2) The nature of the statement and/or videotape[;] (3) The circumstances under which the statement and/or videotape was made[; and] (4) Other factors you find relevant.

*Id.* at 181.

[12] The jury deliberated for around three hours before asking to review A.A.'s forensic interview. After reviewing the video, the jury returned its verdict. The jury found Myers guilty as charged.

[13] The presentence investigation report showed Myers' criminal history. He was charged with criminal conversion in 1996, and the case was dismissed after twelve months of probation. He was convicted of check deception in 2002 and was sentenced to twelve months of probation. A.A.'s victim impact statement consisted of the following: "Earl you leave me alone. Don't hurt me again. You made me feel not good. I'm not being rude but I don't like him." *Id.* at 198.

[14] Myers gave a statement. He said, "everything's been a set up from the get go from my ex-wife and [A.A.'s father]." *Id.* at 200. He denied molesting A.A. He said he was "betrayed" by A.A.'s father "because he wants to be a bully and hurt his ex-wife. And I feel that him tryin' hurt me is actually hurtin' my family

and my kids. And I believe that he's putting his kids through all this for no reason." *Id.* Myers did not apologize or express any remorse.

[15] The trial court considered mitigating and aggravating circumstances. As for the mitigating circumstances, the court found that imprisonment might result in an undue hardship to Myers' dependents. As for aggravating circumstances, the court listed Myers' criminal history, which it did "not give tremendous weight, if any;" that he was "in a position of having care, custody and control of" A.A.; that A.A. "was mentally or physically infirm;" and A.A.'s age, "[p]articularly combined with the prior mentioned aggravator." *Id.* at 202-03. The court found that the aggravators significantly outweighed the mitigating factor. Myers was sentenced to consecutive sentences of forty years for Level 1 felony child molesting and eight years for Level 4 felony child molesting. Myers now appeals.

## Discussion and Decision

### I.    Admissibility of Exhibit 10—Protected Person Statute

[16] Generally, a trial court has broad discretion when ruling on the admissibility of evidence. *Halliburton v. State*, 1 N.E.3d 670, 675 (Ind. 2013). On review, we will disturb the trial court's rulings on the admissibility of evidence where it is shown that the court abused that discretion. *Id.* An abuse of discretion will be found when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[17] But where, as here, there is no objection to preserve the issue for our review, "[t]he fundamental error exception permits an appellate court to review 'a claim that has been waived by a defendant's failure to raise a contemporaneous objection.'" *Benefield v. State*, 945 N.E.2d 791, 801 (Ind. Ct. App. 2011) (quoting *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010)), *trans. denied*. "'Fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible.'" *Benefield*, 945 N.E.2d at 801 (quoting *Perez v. State*, 872 N.E.2d 208, 210 (Ind. Ct. App. 2007), *trans. denied.*). However, "[w]hen the failure to object accompanies the party's affirmative requests of the court, 'it becomes a question of invited error.'" *Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018) (quoting *Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014)). "This doctrine—based on the legal principle of estoppel—forbids a party from taking 'advantage of an error that [he] commits, invites, or which is the natural consequence of [his] own neglect or misconduct.'" *Durden*, 99 N.E.3d at 651 (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)). And "there must be 'evidence of counsel's strategic maneuvering at trial' to establish invited error." *Miller v. State*, 188 N.E.3d 871, 875 (Ind. 2022) (quoting *Batchelor v. State*, 119 N.E.3d 550, 557 (Ind. 2019)).

[18] At issue here is the admissibility of State's Exhibit 10, a copy of the protected person statute. After the parties discussed how best to describe a protected person hearing to the jury, Myers' counsel suggested that the State introduce

the protected person statute[1] as an exhibit.  When the State did just that, Myers did not object, and stated for the record, "No objection, Your Honor."  Tr. Vol. 2, p. 142.  The record reflects evidence from counsel's behavior to establish invited error.

[19]   Additionally, Myers argues that his substantial rights were impaired by the admission of the statute.  He argues that the statute is irrelevant because the jury plays no role in determining the admissibility of evidence and the statute "governs the admissibility of videotaped statements of protected persons." Appellant's Br. p. 11.  And he offers that the admission of the statute placed an improper emphasis on A.A.'s statement.

[20]   The protected person statute, Indiana Code section 35-37-4-6 is an evidentiary statute that governs the admissibility of out-of-court statements and videotapes made by protected persons in criminal prosecutions for certain offenses. Pursuant to the statute, a protected person is a child less than fourteen years old at the time of the offense, an individual with a mental disability, or an individual who is incapable of providing self-care. Ind. Code § 35-37-4-6(c). Further, the statute establishes that, before a statement or videotape can be admitted, the prosecuting attorney must provide ten days' notice before the trial, and the court must conduct a reliability hearing outside the presence of the jury to determine whether the statement or videotape provide "sufficient

---

[1] Ind. Code § 35-37-4-6 (2024).

indications of reliability." I.C. § 35-37-4-6(f)(1). The protected person must either testify at trial or be found unavailable *by the court* because serious emotional distress would occur by testifying at trial in the defendant's presence, because of medical reasons, or because the person lacks the capacity to understand an oath. I.C. § 35-37-4-6(f)(2). When a person is found to be unavailable to testify at trial for a stated reason, the statement or videotape may be admitted as evidence. I.C. § 35-37-4-6(g).

[21] Critically, the statute itself contains specific provisions regarding the respective roles of the court and the jury. When a statement or videotape is admitted under the statute, the court is required to instruct the jury that it is for the jury "to determine the weight and credit to be given the statement or videotape," considering the mental and physical age of the person making the statement or videotape, the nature of the statement or videotape, the circumstances under which it was made, and other relevant factors. I.C. § 35-37-4-6(i).

[22] Stated differently, the protected person statute is simply a statutory mechanism for the court, upon the motion of a party, to determine whether a witness is a protected person and, if so, to instruct the jury about the weight and credibility to be given to the out-of-court statement. There is no provision for the jury to decide whether a person is a protected person; rather, that is the court's role as gatekeeper.

[23] Further, our Supreme Court has held that the content of a statute is a matter of law to be conveyed through the jury instructions, not through evidentiary

exhibits. *See Sherelis v. State*, 498 N.E.2d 973, 977 (Ind. 1986) (holding that it was not error for the court to exclude a copy of a criminal statute as evidence). Specifically, the Court noted that "it has long been deemed the province of the court rather than the jury to select or focus upon the statutes which are intended to govern in a particular case." *Id*. (quoting *McClain v. State*, 410 N.E.2d 1297, 1303-04 (Ind. 1980)). And the Court noted that it "is the province of the trial court to explain the law to the jury." *Id*. (quoting *Candler v. State*, 363 N.E.2d 1233, 1242 (Ind. 1977)).

[24] Here, it was error for the court to admit the protected person statute as evidence. The proper protocol was for the court to first determine if the witness was a protected person. If so, the court should have simply instructed the jury that it determined the witness to be a protected person and, as such, was not required to testify in court; that the witness's video testimony would be presented instead; and that it was for the jury to determine the weight and credibility to be assigned to the out-of-court statement.

[25] However, we find no reversible error in the admission of State's Exhibit 10, the admission of which was suggested by Myers. Myers has invited any error, and in any event, the admission of the exhibit was not fundamentally erroneous.

[26] Furthermore, A.A.'s testimony was the cornerstone of the State's case against Myers. There already was significant attention drawn to her testimony provided in both the forensic interview and the protected person hearing. And the jury was instructed that it had the power to weigh and credit Exhibit 10.

We find no impairment of Myers' substantial rights by the admission of the protected person statute.

## II.  Appropriateness of Sentence

[27]  Myers contends that his forty-eight-year sentence is inappropriate in light of the nature of the offenses and his character.  "Appellate Rule 7(B) empowers appellate revision if the reviewing court finds the sentence is 'inappropriate in light of the nature of the offense and the character of the offender.'"  *Cramer v. State*, 240 N.E.3d 693, 698 (Ind. 2024) (quoting App. R. 7(B)).  "Even if the trial court carefully adhered to the sentencing procedure, this Court has the authority under Appellate Rule 7(B) to modify the sentence if we deem it inappropriate based on the nature of the offense and the character of the offender."  *Cramer*, 240 N.E.3d at 698.

[28]  Appellate Rule 7(B) serves "to leaven the outliers, rather than to achieve a perceived 'correct' sentence," *McCallister v. State*, 91 N.E.3d 554, 566 (Ind. 2018), allowing revision of a sentence if the court finds the trial court's decision to be inappropriate in consideration of the nature of the offense and the offender's character.  *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7(B)).  "Ultimately, our constitutional authority to review and revise sentences boils down to our collective sense of what is appropriate," *Taylor v. State*, 86 N.E.3d 157, 165 (Ind. 2017) (cleaned up), an act that is reserved for "exceptional" cases.  *Gibson v. State*, 43 N.E.3d 231, 241 (Ind. 2015).  It is up to the defendant to "persuade the appellate court that his or her sentence has met

th[e] inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The trial court's sentence is afforded considerable deference and will stand unless "compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[29] Regarding the nature of the offense, we begin with the statutory range. A Level 1 felony as charged in this case carries a sentencing range of between twenty and fifty years with an advisory sentence of thirty years. Ind. Code § 35-50-2-4(c) (2023). And a Level 4 felony as charged in this case carries a sentencing range of between two and twelve years with an advisory sentence of six years. Ind. Code § 35-50-2-5.5 (2014). Myers received a forty-year sentence for his Level 1 felony conviction and an eight-year sentence for his Level 4 felony conviction. Myers could have received a sixty-two-year sentence, but received a forty-eight-year sentence. We are not persuaded that this sentence is inappropriate.

[30] In assessing the nature of the offenses, we compare "the defendant's actions with the required showing to sustain a conviction under the charged offense" and identify whether there is "'anything more or less egregious'" about the defendant's offense that distinguishes it from the "'typical offense.'" *McFarland v. State*, 153 N.E.3d 369, 373 (Ind. Ct. App. 2020) (quoting *Moyer v. State*, 83 N.E.3d 136, 142 (Ind. Ct. App. 2017), *trans. denied*). Here, the record reveals

that Myers was in a position of trust with A.A., a particularly vulnerable victim because of her learning disabilities and speech impediment and who was ten years old. Myers refused to stop his behavior even after A.A. said it hurt, showing no restraint. A.A. has PTSD, substantial fears, and nightmares. Myers has not shown that the nature of the offense requires downward revision.

[31] Assessing Myers' character, we observe that he has a criminal history. And Myers showed a lack of remorse, not limited solely to his continued profession of innocence but by blaming others for his situation. *See Deane v. State*, 759 N.E.2d 201, 205 (Ind. 2001) (lack of remorse proper aggravator where defendant expressed no regret or appreciation of crime that occurred, regardless of who was culpable). Furthermore, when placed in a position of trust over a vulnerable child with learning disabilities, he violated that trust by sexually abusing her and masturbating in her presence. Myers has not persuaded us that his sentence should be revised downward based on his character.

[32] We further note that Myers challenges the imposition of consecutive sentences. Indiana Code section 35-50-1-2(a)(7) lists child molesting as a crime of violence to which the cap for a total consecutive sentence does not apply. And the imposition of consecutive sentences lies within the discretion of the trial court. *Gilliam v. State*, 901 N.E.2d 72, 74 (Ind. Ct. App. 2009). Furthermore, there is independent evidence to support each charge. "The basis for the gross impact that consecutive sentences may have is the moral principle that each separate and distinct criminal act deserves a separately experienced punishment." *Powell v. State*, 895 N.E.2d 1259, 1263 (Ind. Ct. App. 2008), *trans. denied*. "Similarly,

additional criminal activity directed to the same victim should not be free of consequences. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). And "[t]he younger the victim, the more culpable the defendant's conduct." *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011). A.A. was ten years old, had a learning disability, and communicated, in part, with her hands. Myers has not demonstrated that the trial court abused its discretion by imposing consecutive sentences for his convictions.

[33] Myers has not persuaded us that his sentence is inappropriate or that the trial court abused its discretion in sentencing.

## Conclusion

[34] We conclude that the admission of State's Exhibit 10 does not constitute fundamental error as that error, if any, was invited by Myers. And we conclude that Myers' sentence is not inappropriate and that the trial court did not abuse its discretion by imposing consecutive sentences. Consequently, we affirm the trial court's judgment in all respects.

Affirmed.

Bailey, J., and May, J., concur.

ATTORNEY FOR APPELLANT

Elizabeth A. Deckard
Bloom Gates Shipman & Whiteleather, LLP
Columbia City, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana